Sugar Supply Corporation, Appellant, v. Great Lakes Transit Corporation, Appellee.

Gen. No. 35,900.

Opinion filed October 25, 1933.

O'Shaughnessy, O'Shaughnessy & Cunningham, for appellant; Walter F. Cunningham and Joseph S. Sullivan, of counsel.

Frank W. Sullivan, for appellee.

Mr. Justice Hebel delivered the opinion of the court.

This action was one in replevin. The plaintiff is a wholesale dealer in sugar. The defendant is a common carrier on the Great Lakes, and maintains a warehouse at its Chicago terminal, in which it stores goods as an incident to the transportation thereof.

On February 7, 1928, a statement of claim in trover was filed. No question was raised upon the pleadings by either party to this action, and the case was tried by the court without a jury, and resulted in a finding and judgment for the defendant. The plaintiff seeks to review the judgment upon an appeal to this court.

The facts are to this effect: On December 12, 1927, the Chicago Grocery Company, a corporation, entered into a contract with W. J. McCahan Sugar Refining & Molasses Company, a corporation, through Kenneth L. Fox & Company, McCahan's Chicago representative, for the purchase of 600 bags of refined sugar of 100 pounds each. The written contract provided that the terms of payment were "Cash less 2% seven days from date of invoice, or cash less 2% before delivery at seller's option." Among other provisions were the following: "Seller reserves the right to cancel this contract in the event of any change in the buyer's credit rating with seller, or in the event of the buyer failing to perform any of the terms of this or any other existing contract," and "If the Seller has suitable available consigned stocks, withdrawal against this contract in whole or in part may be made therefrom subject to seller's approval."

The McCahan Company kept a consigned stock of sugar on hand in the defendant's warehouse at Chicago, and on the date the contract was entered into, Kenneth L. Fox & Company delivered to the Chicago Grocery Company, on a form furnished by the McCahan Company to be used by its agent for that purpose, called, "Consigned Sugar Withdrawal Order No. 1044," wherein the defendant was to deliver to the Chicago Grocery Company from its stock of sugar, at the defendant's warehouse, the 600 bags of sugar covered by the contract, the same bearing car and initial numbers PRR–41597. On the same day, the plaintiff purchased the sugar from the Chicago Grocery Company and received the consigned sugar order referred to, which was indorsed as follows: "Please deliver to bearer, Chicago Grocery Company by M. E. Palman, Sec." The same consigned withdrawal order was then indorsed by the plaintiff, and by it on the same date surrendered to the defendant. The defendant thereupon issued and delivered to plaintiff a letter dated December 12, 1927, addressed to the plaintiff, wherein it was stated:

"We have on hand in our warehouse, 600 bags McCahan fine granulated sugar Ex Car PRR 41597, on which we hold order from the Chicago Grocery Company to deliver to your account. This sugar will only be delivered on the surrender of this letter or order from the bank."

The records of the defendant disclose that the sugar in question was held by the defendant for the plaintiff. On the same day, plaintiff paid to the Chicago Grocery Company the sum of $3,353.36, being the purchase price agreed upon between the Chicago Grocery Company and the plaintiff for the 600 bags of sugar referred to in the contract.

Subsequently, the plaintiff surrendered to the defendant the letter of December 12, 1927, and received

from the defendant 475 bags of the sugar in question, leaving 125 bags still held by the defendant in its warehouse.

On December 15, 1927, the Chicago Grocery Company entered into a second contract with the McCahan Company through Kenneth L. Fox & Company, for the purchase of 1,800 bags of sugar. This contract is exactly the same in form as the first contract herein mentioned.

On the following day, December 16, 1927, Kenneth L. Fox & Company, the McCahan Company's Chicago agent, delivered to the Chicago Grocery Company, "Consigned Sugar Withdrawal Order No. 1057," in and by which order the defendant was directed to deliver to the Chicago Grocery Company from the consigned stock of the McCahan Company at the defendant's warehouse, 600 bags of sugar, bearing car initials and number PRR 569718.

On this date the plaintiff purchased said 600 bags of the sugar from the Chicago Grocery Company and paid therefor $3,382.76, and procured the said Withdrawal Order No. 1057, indorsed by the Chicago Grocery Company, which the plaintiff in turn indorsed and delivered to the defendant. Whereupon the defendant issued a second letter, dated December 16, 1927, addressed to the plaintiff, identical with the first letter, but referring to the sugar as Ex Car PRR 569718. The records of the defendant were thereupon changed to show that the sugar referred to in said letter was held by the defendant in the name of the plaintiff.

Subsequently, the plaintiff surrendered and delivered to the defendant the letter of December 16, 1927. None of the sugar covered by the letter of December 16, 1927, was delivered by the defendant, so that the defendant was holding in its warehouse 725 bags of sugar in the name of the plaintiff.

On December 20, 1927, the McCahan Company mailed to the Chicago Grocery Company an invoice for $3,571.80, covering the purchase price of 600 bags of sugar covered by the contract between these companies of December 12, 1927. On this date the McCahan Company also mailed to the Chicago Grocery Company an invoice for $3,571.80, covering 600 bags of the 1,800 bags of sugar covered by the contract dated December 15, 1927.

On December 27, 1927, Chicago Grocery Company paid to the McCahan Company the sum of $1,750.18, said payment being one-half of the purchase price of the 600 bags of sugar covered by the contract of December 12, 1927, less a discount of 2 per cent. This 2 per cent discount, $35.72, was credited on the McCahan Company books as of February 28, 1928.

On December 28, 1927, the Chicago Grocery Company issued a second check to the McCahan Company for $1,750.18, being the balance of the purchase price of the sugar covered by the contract of December 12, 1927, less a discount of 2 per cent. Pursuant to telegraphic instructions from the Chicago Grocery Company this latter check was not deposited by the McCahan Company until January 9, 1928, and was protested for nonpayment on January 11, 1928.

On January 13, 1928, Kenneth L. Fox & Company, the McCahan Company's agent, wrote a letter to the defendant requesting the defendant not to deliver the remaining 725 bags of sugar and on January 14, 1928, Kenneth L. Fox & Company wrote another letter to the defendant requesting the defendant to deliver the sugar remaining on hand covered by the Withdrawal Orders of December 12, 1927, and December 16, 1927, to the Siewert Teaming Company. The defendant delivered the sugar pursuant to said directions.

On January 16, 1928, the plaintiff made a written demand on the defendant for the delivery to it of the

725 bags of sugar, with which demand the defendant failed and refused to comply.

The plaintiff's contention is that the defendant was in possession of the sugar in question as bailee for the plaintiff. This court is in accord with the contention of the plaintiff that the acceptance by the defendant from the plaintiff of the withdrawal orders, issued by the McCahan Company and indorsed by the Chicago Grocery Company, and delivery by the defendant to the plaintiff of the letters of December 12, 1927, and December 16, 1927, constituted contracts of bailment, and in and by such contracts the plaintiff became the bailor and the defendant the bailee respecting the sugar referred to in said withdrawal orders and the letters signed by this defendant. The Supreme Court of this State in the case of *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.,* 157 Ill. 554, announced a rule of importance, which has a material bearing upon the question involved in the instant case. The court in announcing the rule said:

"When the vendor delivers to the purchaser, or to the purchaser's authorized agent, an order upon the vendor's bailee to deliver the goods sold to such purchaser or agent, there is a constructive delivery of the property; and the delivery of the order vests the purchaser with the indicia of ownership, and has the same effect in transferring the title to the property as the delivery of the property."

It is to be noted that the McCahan Company delivered the withdrawal orders to the Chicago Grocery Company, which company indorsed the same, and thereby the plaintiff was clothed with authority to demand delivery of the sugar from the defendant, and the defendant recognized plaintiff's title to this property, as evidenced by the signed letters and the entries made upon defendant's books.

The defendant was fully authorized in the acceptance of the withdrawal orders issued by the McCahan Company, the vendor, to the Chicago Grocery Company, and indorsed by it. The delivery of the withdrawal orders by the McCahan Company, through its agent, was constructive delivery of the property, and vested the purchaser with the indicia of ownership.

The rule as applied to the goods purchased in the instant case is that where there has been no waiver by the seller of the payments, still if he delivers the property to the purchaser, and vests him with indicia of ownership, and the purchaser pledges it to a bona fide purchaser without notice, the latter acquires rights which will be protected. *Michigan Cent. R. Co. v. Phillips,* 60 Ill. 190.

In the case before us, the contracts entered into by the McCahan Company and the Chicago Grocery Company were in full force and effect at the time the sugar in question was purchased by the plaintiff, and deliveries were made by the defendant to the plaintiff as late as January 11, 1928.

In construing the contracts and withdrawal orders, it is evident from the facts in evidence that the McCahan Company invested the Chicago Grocery Company with the indicia of ownership when the contracts were entered into and the withdrawal orders delivered to the Chicago Grocery Company, and by that act waived its right to withdraw the sugar from the warehouse as against the plaintiff, who was a purchaser from the Grocery Company without notice of any infirmity in the title of this company; while in the case of fraud in the purchase of property, such purchase does not render the sale void, but it is voidable at the option of the party defrauded. However, when a person purchases and acquires the possession of property by fraudulent means, and sells it to a bona fide purchaser without notice, the latter acquires title

thereto before the sale is avoided and the property is reclaimed after sale to a bona fide purchaser. *Michigan Cent. R. Co. v. Phillips, supra.*

No question is raised before this court as to whether or not the plaintiff was a bona fide purchaser for value of the sugar, but the defendant insists that the plaintiff is chargeable with knowledge of the terms of the contract between the McCahan Company and the Chicago Grocery Company. The answer to this contention is that the contracts were not canceled at the time the rights of the plaintiff intervened, nor were the goods reclaimed until the McCahan Company wrote a letter to the defendant not to deliver the remaining bags of sugar, and on January 14, 1928, again advised the defendant by letter to deliver the balance of the sugar to a teaming company, which was done under the direction of the McCahan Company by its cancellation order. The defendants in compliance with the sugar withdrawal orders delivered 475 bags of sugar to the plaintiff and thereby acknowledged the right of the plaintiff to the sugar, evidenced by the withdrawal orders and the notation upon the books of the defendant, together with an acknowledgment contained in a letter from the defendant to the plaintiff.

The notice of cancellation after the plaintiff had paid the price of the sugar to the Chicago Grocery Company, as evidenced by these withdrawal orders, comes too late to affect the plaintiff's title. Notice should have been prior to the payment of the money by the plaintiff, or by such other act as the McCahan Company deemed advisable, to indicate its right in and to the property. But not having done so and no action having been taken until after the plaintiff had paid the consideration for the purchase of this sugar and received 475 bags of it, the McCahan Company was in no position to deprive the plaintiff of its right in and to the sugar, and under the circumstances, the

plaintiff should have been protected against the W. J. McCahan Sugar Refining & Molasses Company's claim to the property.

The plaintiff suggests that if the judgment is reversed the cause should be remanded with directions to permit the plaintiff to increase the *ad damnum* and the court below to enter judgment in favor of the plaintiff in the sum of $4,607.82, with interest at 5 per cent per annum from January 16, 1928, the date of the conversion, or the alternative that judgment be reversed and judgment entered in this court in favor of the plaintiff for the amount of the *ad damnum*, $4,500.

It appears that the parties stipulated that the value of 725 bags of sugar was $4,607.82, and that interest if recoverable on June 12, 1931, amounted to $784.41 at 5 per cent per annum, making a total of $5,392.23. The amount of the damages sustained by the plaintiff is more than the amount of $4,500, alleged in the declaration as the *ad damnum*, and as the plaintiff waived the excess amount due, this court will direct the clerk to enter an order that the judgment for the defendant is reversed, and that judgment for the sum of $4,500 be entered in favor of the plaintiff.

Judgment for the defendant will be reversed and judgment entered here for the plaintiff with a finding of fact.

*Judgment for defendant reversed and judgment entered here for the plaintiff with a finding of fact.*

HALL, P. J., and WILSON, J., concur.

Findings of fact: This court finds that the plaintiff bought the sugar in question from the Chicago Grocery Company, evidenced by two withdrawal orders for the sugar, issued by the W. J. McCahan Sugar Refining & Molasses Company, a corporation, and properly indorsed by the Chicago Grocery Company; that this sugar was stored with the defendant; that the plaintiff presented the indorsed withdrawal orders to

138

the defendant for the delivery of the sugar so stored, and the defendant issued two letters acknowledging that the sugar was stored with the defendant, and that an order from the Chicago Grocery Company was held by the defendant to deliver the sugar to the plaintiff's account, and that the sugar would be delivered on the surrender of the defendant's letter or order from the bank, and the defendant refused to deliver the balance of 725 bags of sugar to the plaintiff upon demand, and that the defendant is liable as bailee for the conversion to the plaintiff for the value of the sugar.